Argued and submitted March 6, reversed and remanded July 22, 2015

Shalene SMITH,
as Guardian *ad litem* for Rubin Smith,
*Plaintiff-Appellant,*

*v.*

OREGON HEALTH SCIENCE
UNIVERSITY HOSPITAL AND CLINIC,
*Defendant-Respondent.*

Multnomah County Circuit Court
111115016; A154384

356 P3d 142

Michael Vergamini argued the cause and filed the briefs for appellant.

Janet M. Schroer argued the cause for respondent. With her on the brief were Ruth C. Rocker and Hart and Wagner LLP.

Before Armstrong, Presiding Judge, and Nakamoto, Judge, and Tookey, Judge.

TOOKEY, J.

## TOOKEY, J.

Plaintiff, as guardian *ad litem* for child,[1] appeals a judgment entered in favor of defendant Oregon Health Science University Hospital and Clinic. Plaintiff argues that the trial court erred when it granted defendant's motion for summary judgment after concluding that plaintiff had failed to timely file her claim. We conclude that no objectively reasonable factfinder could conclude that plaintiff's action arose any later than August 30, 2007, and that plaintiff failed to commence her action within the two-year time limitation set forth in ORS 30.275(9); however, we further conclude that the tolling provision in ORS 12.160 (2005) applied to plaintiff's claim and, given the tolling, plaintiff timely commenced her action. Thus, the trial court erred when it granted summary judgment in favor of defendant. Accordingly, we reverse and remand.

Summary judgment is appropriate if "there is no genuine issue as to any material fact and * * * the moving party is entitled to prevail as a matter of law." ORCP 47 C. There is no genuine issue of material fact if, based on the record, "no objectively reasonable [factfinder] could return a verdict for the adverse party on the matter that is the subject of the motion for summary judgment." *Id.* In determining whether a genuine factual dispute exists, we review the record in the light most favorable to the nonmoving party—in this case, plaintiff—and draw all reasonable inferences in her favor. *Id.*; *Jones v. General Motors Corp.*, 325 Or 404, 420, 939 P2d 608 (1997). We state the facts consistently with that standard.

On May 31, 2007, child, who was three weeks old at the time, underwent surgery at defendant's hospital. At that time, plaintiff understood that the surgery was part of a treatment for a condition called Hirschsprung's disease, which had caused a bowel obstruction in child. Plaintiff was informed that a damaged portion of child's colon would be removed and a colostomy[2] would be performed, in which the

---

[1] For clarity, we refer to Shalene Smith, child's mother and guardian *ad litem*, as "plaintiff" and we refer to child himself as "child."

[2] A colostomy is the "[e]stablishment of an artificial connection between the * * * colon and the skin." *Stedman's Medical Dictionary* 383 (27th ed 2000).

functional end of the remaining colon would be attached to a colostomy bag and the end of the colon leading to the rectum would be sutured closed. Then, several months later, another surgery would be performed to "take down" the colostomy and reattach the two ends of the colon.

During the first surgery, the surgeon, by mistake, sutured the functional end of child's colon closed and attached the colostomy bag to the portion of the colon that was meant to have been sutured closed; as a result, child's intestines became obstructed again. X-rays taken on June 7, 2007, revealed the surgical error and showed that child's intestines had become abnormally distended[3] as a result. That same day, child underwent emergency surgery to correct the error, during which an additional portion of colon had to be removed and the colostomy was performed again.

On July 6, 2007, plaintiff sent defendant a "formal grievance," in which plaintiff stated, in part, that child "could have died because of the mistake of hooking up the wrong ends of his intestines to the colostomy bag," and that plaintiff was "very concerned for [child's] long term overall health and well-being" because of, among other things, "the prolonged exposure to narcotics," "the skin breakdown from the necessary medications to care for his skin," and "undergoing a second surgery that should have been done right the first time."

Then, on August 30, 2007, plaintiff sent defendant a "formal claim," in which she asserted that "the second surgery would have not been needed had the first surgery been done correctly," and that child had suffered, among other things, an immense amount of pain, multiple exposures to radiation, multiple intravenous (IV) lines, prolonged exposure to pain narcotics and anesthetic, a thigh burn because of a ruptured IV line, and "suffering through almost 3 weeks of starvation." Plaintiff stated, "We just want to have our healthy boy's third and hopefully final surgery to reconnect his colon and intestines covered through the hospital and any future thoracic/abdominal complications that may arise." Plaintiff also stated, "We are seeking financial compensation

---

[3] Various words were used by plaintiff and defense counsel during the deposition, including "ballooned," "dilated," "filled up like a balloon," "enlarged," "distended," and "inflated."

for my Husband['s] time off from work and the pain and suffering for this family that came from this entire experience as well as future problems that may arise." We have found no evidence in the summary judgment record indicating what, if any, response plaintiff received from defendant.

Several months later, when child was eight months old, he underwent a third surgery at defendant's hospital, to "take down" the colostomy and reattach the two ends of the remaining colon. However, child continued to suffer abdominal and rectal problems. On November 16, 2009, child underwent a colonoscopy, which, according to plaintiff, revealed that "most of the sigmoid colon had been unnecessarily removed in the 2007 surgery and that the scar tissue had caused the colon to constrict, causing numerous medical problems and significant pain."

On November 16, 2011, when child was four and one-half years old, plaintiff filed the current action. In her amended complaint, plaintiff alleged that defendant

"was negligent in one or more of the following particulars:

"(a) In negligently suturing [child's] intestines, causing subsequent corrective surgery to remove most of the sigmoid colon and creating scar tissue that interfered with normal bowel movements and healthy development of the intestines.

"(b) In failing to exercise reasonable care in performing the surgery in 2007 to remove intestinal blockage and in suturing the colostomy bag to the wrong end of the intestine."

In its answer, defendant contended that plaintiff's claims were subject to the Oregon Tort Claims Act (OTCA), set forth in ORS chapter 30, and that plaintiff's claims were "barred by the statute of limitations and/or statute of repose." Subsequently, defendant moved for summary judgment, arguing that plaintiff discovered the alleged negligence and resulting harm by, at the latest, August 30, 2007, and that, under ORS 30.275(9)[4] of the OTCA, she had only

---

[4] ORS 30.275(9) provides:

"Except as provided in ORS 12.120, 12.135 and 659A.875, but notwithstanding any other provision of ORS chapter 12 or other statute providing a

two years from that date within which to commence an action. In response, plaintiff argued that there was a genuine issue of material fact as to when plaintiff reasonably discovered that a cognizable claim existed and that, because child was a minor, plaintiff had a maximum of five years to bring a cause of action for medical negligence, under ORS 12.160[5] and ORS 12.110(4).[6] Defendant argued that ORS 12.160 did not toll the time for filing, because the provisions

limitation on the commencement of an action, an action arising from any act or omission of a public body or an officer, employee or agent of a public body within the scope of ORS 30.260 to 30.300 shall be commenced within two years after the alleged loss or injury."

ORS 30.275 was amended in 2009, but those amendments do not affect our analysis of this case. For clarity, we refer throughout this opinion to the current version of the statute.

[5] Plaintiff cited the current version of ORS 12.160, which provides, in part:

"(1) Subject to subsection (2) of this section, if a person is entitled to bring an action that is subject to the statutes of limitation prescribed by ORS 12.010 to 12.050, 12.070 to 12.250 or 12.276, and at the time the cause of action accrues the person is a child who is younger than 18 years of age, the statute of limitation for commencing the action is tolled for so long as the person is younger than 18 years of age.

"(2) The time for commencing an action may not be extended under subsection (1) of this section for more than five years, or for more than one year after the person attains 18 years of age, whichever occurs first."

As discussed later in this opinion, if plaintiff's action arose before January 1, 2008, then ORS 12.160 (2005) would be the version of that statute that is relevant to this case. *See* Or Laws 2007, ch 285, § 2 ("The amendments to ORS 12.160 by section 1 of this 2007 Act apply only to causes of action arising on or after [January 1, 2008].""). ORS 12.160 (2005) provided:

"If, at the time the cause of action accrues, any person entitled to bring an action mentioned in ORS 12.010 to 12.050, 12.070 to 12.250 and 12.276 is within the age of 18 years or insane, the time of such disability shall not be a part of the time limited for the commencement of the action; but the period within which the action shall be brought shall not be extended more than five years by any such disability, nor shall it be extended in any case longer than one year after such disability ceases."

[6] ORS 12.110(4) provides:

"An action to recover damages for injuries to the person arising from any medical, surgical or dental treatment, omission or operation shall be commenced within two years from the date when the injury is first discovered or in the exercise of reasonable care should have been discovered. However, notwithstanding the provisions of ORS 12.160, every such action shall be commenced within five years from the date of the treatment, omission or operation upon which the action is based or, if there has been no action commenced within five years because of fraud, deceit or misleading representation, then within two years from the date such fraud, deceit or misleading representation is discovered or in the exercise of reasonable care should have been discovered."

of ORS 12.160 do not apply to actions commenced under ORS 30.275(9).

After a hearing, the trial court agreed with defendant and concluded that "the overwhelming evidence is that [plaintiff] knew * * * that there was negligence [and] knew that the negligence had caused some injury." It further concluded that, under the OTCA, a two-year statute of limitation applied to the action, and that time limitation was not tolled by ORS 12.160. Accordingly, the court granted summary judgment in favor of defendant, and plaintiff now appeals.

As an initial matter, we note again that ORS 12.160 was amended in 2007, and the changes made by that amendment apply to causes of action arising on or after January 1, 2008. Or Laws 2007, ch 285, § 2. Therefore, if plaintiff's cause of action arose in 2007, as defendant contends, then ORS 12.160 (2005) would be the version of the statute relevant to this case. Conversely, if plaintiff's cause of action arose in 2009, as plaintiff contends, then the current version of ORS 12.160 would be the relevant version of the statute. Thus, we begin with the issue of whether there is a genuine issue of material fact as to whether plaintiff's action arose in 2007 or 2009. Specifically, we must decide whether, considering the facts in the light most favorable to plaintiff, no objectively reasonable factfinder could conclude that plaintiff's action arose any later than August 30, 2007.

ORS 30.275(9) provides that, with certain enumerated exceptions, "an action arising from any act or omission of a public body or an officer, employee or agent of a public body within the scope of ORS 30.260 to 30.300[7] shall be commenced within two years after the alleged loss or injury." A "discovery rule" applies to actions brought under the OTCA, which means that the limitations period "does not begin to run until a 'plaintiff has a reasonable opportunity to *discover his injury* and the identity of the party responsible for that injury.'" *Doe v. Lake Oswego School District*, 353 Or 321, 327, 297 P3d 1287 (2013) (quoting *Adams v. Oregon State Police*, 289 Or 233, 239, 611 P2d 1153 (1980); emphasis in *Doe*).

---

[7] The parties do not dispute that defendant is "a public body * * * within the scope of ORS 30.260 to 30.300."

For purposes of ORS 30.275, the term "injury" means "what formed the basis for an action, *i.e.*, legally cognizable harm," and "harm is legally cognizable if it is the result of tortious conduct." *Doe*, 353 Or at 327-28 (internal quotation marks and citations omitted). Thus, "an 'injury' is discovered when a plaintiff knows or should have known of the existence of three elements: (1) harm; (2) causation; and (3) tortious conduct." *Id.* at 328. In other words, "[t]he statute of limitations begins to run when the plaintiff knows or, in the exercise of reasonable care, should have known facts that would make a reasonable person aware of a substantial possibility that each of the elements of a claim exists." *Id.* at 333 (internal quotation marks omitted).

As we clarified in *Raethke v. Oregon Health Sciences Univ.*, 115 Or App 195, 198, 837 P2d 977 (1992), *rev den*, 315 Or 442 (1993), a "cause of action for personal injury accrues from the date the injury is, or should have been, discovered, not from the time the full extent of damages is ascertained." *See also Doe*, 353 Or at 335 (noting that, "if a plaintiff knows that he or she has suffered some harm and knows that it is the result of tortious conduct, an argument that the plaintiff did not know the full extent of the harm or that those facts had legal significance will be of no avail"). Thus, "a plaintiff may not avoid a statute of limitations merely by alleging different or additional injury that results from a tortious act." *Columbia County v. Sande*, 175 Or App 400, 406, 28 P3d 657 (2001) (citing *Raethke*, 115 Or App at 199).

*Raethke*, like this case, involved a medical malpractice claim against a public body, in which the trial court had granted summary judgment in favor of the defendant—in that case, for the plaintiff's failure to provide timely notice of her claim under ORS 30.275. The plaintiff in *Raethke* had undergone a procedure in 1985 to remedy severe uterine bleeding after giving birth. *Id.* at 197. During the next two years, she attempted, unsuccessfully, to conceive another child, and, in 1987, it was discovered that one of the plaintiff's Fallopian tubes was inside her uterus, "acting as a natural intrauterine device that prevented implantation of fertilized eggs." *Id.* The doctor at that time told the plaintiff that he believed that the problem might have been caused by the 1985 procedure, and that the displaced Fallopian tube

would have to be removed before she could become pregnant again. *Id.* The plaintiff underwent surgery in 1987, and was told that "'there was no reason why' she should not be able to have another child." *Id.* However, after unsuccessfully trying for another year and a half to conceive a child, the plaintiff was informed by her doctor that she might be permanently infertile. *Id.* at 197-98.

On appeal, the question was whether, for purposes of ORS 30.275, the plaintiff had discovered her injury in 1987, when she learned that the 1985 surgery had caused one of her Fallopian tubes to be displaced inside her uterus, or in 1989, when she learned that she was permanently infertile. *Id.* at 198-99. Ultimately, we concluded that the plaintiff had discovered her injury in 1987, because she "knew that she had suffered harm in 1987, and knew the cause and the identity of the tortfeasor at that time." *Id.* at 200.

In this case, viewing the facts in the light most favorable to plaintiff, we conclude that no objectively reasonable factfinder could find that plaintiff's cause of action arose any later than August 30, 2007, when plaintiff submitted her "formal claim" to defendant. According to plaintiff's own deposition testimony, it was "clear to [her] before [child] was discharged in June of 2007 that a mistake had been made during the first surgery." Plaintiff also testified that she knew that the mistake had caused harm—specifically, plaintiff testified that between child's second and third surgeries, child had developed a rash and his stoma[8] was too small, and plaintiff believed at the time that those problems were caused by the need to remove an additional portion of his colon and "redo the stoma" in order to correct the mistake that was made during the first surgery. Moreover, in both the "formal grievance" and the "formal claim" that plaintiff submitted in July and August 2007, respectively, plaintiff asserted that child's surgeon had made a mistake and that the mistake had caused harm, including prolonged exposure to narcotics, skin breakdown from medication, the experience of undergoing a second

---

[8] The "stoma" was the opening of the colon to which the colostomy bag was attached. *See Stedman's Medical Dictionary* 1701 (26th ed 2000) (defining "stoma" as "[a]n artificial opening between two cavities or canals, or between such and the surface of the body").

surgery, multiple exposures to radiation, "multiple IV lines and attempts," an IV burn, increased costs, and pain and suffering. Indeed, in her response to defendant's motion for summary judgment, plaintiff stated that "it is undisputed that [plaintiff] believed that [child's] surgeries in 2007 had been negligently performed and caused injury in 2007."

Nevertheless, plaintiff argues that it was not until child's colonoscopy in November 2009 that it was discovered that the error in the 2007 surgery was the "legally cognizable cause of the subsequent medical complications and physical discomfort that [child] suffered for the next four years and which form the basis of the law suit below." In other words, plaintiff argues that it was not until 2009 that plaintiff "finally and affirmatively learned" that child's continued symptoms had been caused by the first surgery in 2007 and not by child's Hirschsprung's disease, allergies, or some other condition. However, "an argument that the plaintiff did not know the full extent of the harm or that those facts had legal significance will be of no avail." *Doe*, 353 Or at 335. Plaintiff in this case "knew that [child] had suffered harm" by August 30, 2007, and "knew the cause and the identity of the tortfeasor at that time[;]" that plaintiff did not discover until 2009 that child's *subsequent* medical complications and physical discomfort were caused by that first surgery does not change the fact that, for purposes of ORS 30.275(9), plaintiff had discovered in 2007 that an "injury" had occurred. *Raethke*, 115 Or App at 200. Thus, we conclude that no objectively reasonable factfinder could conclude that plaintiff's action arose any later than August 30, 2007, and, therefore, there is no genuine issue of material fact as to whether plaintiff's action arose in 2007 or 2009.

Having determined that no objectively reasonable factfinder could conclude that plaintiff's action arose any later than August 30, 2007, we now turn to the issue of whether plaintiff's claim was timely filed. Under ORS 30.275(9), a plaintiff with a tort claim against a public body generally has two years within which to commence an action. However, because child was (and still is) under the age of 18 years, if the tolling provision in ORS 12.160 applies to OTCA claims, as plaintiff argues, then her claim was nevertheless timely filed.

Because the cause of action accrued no later than August 2007, ORS 12.160 (2005) is the version of ORS 12.160 that we must consider in this case. *See John Latta Associates, Inc. v. Vasilchenko*, 240 Or App 96, 105, 246 P3d 72 (2010) (applying the 2005 version of ORS 18.165(1)(a), despite plaintiff's reliance on the 2007 version of that statute, because the conveyance at issue occurred before the 2007 amendment took effect).[9] Again, that statute provided:

> "If, at the time the cause of action accrues, any person entitled to bring an action mentioned in ORS 12.010 to 12.050, 12.070 to 12.250 and 12.276 is within the age of 18 years or insane, the time of such disability shall not be a part of the time limited for the commencement of the action; but the period within which the action shall be brought shall not be extended more than five years by any such disability, nor shall it be extended in any case longer than one year after such disability ceases."

Thus, for plaintiff's argument to succeed, we must first conclude that her action is one that is "mentioned in ORS 12.010 to 12.050, 12.070 to 12.250 and 12.276." Plaintiff points to ORS 12.110(4), which provides:

> "An action to recover damages for injuries to the person arising from any medical, surgical or dental treatment, omission or operation shall be commenced within two years from the date when the injury is first discovered or in the exercise of reasonable care should have been discovered. However, notwithstanding the provisions of ORS 12.160, every such action shall be commenced within five years from the date of the treatment, omission or operation upon which the action is based or, if there has been no action commenced within five years because of fraud, deceit or misleading representation, then within two years from the

---

[9] Defendant contends that we are precluded from deciding this case under any prior version of ORS 12.160 because plaintiff relied only on the current version of the statute both at trial and on appeal. Although plaintiff has not addressed the matter of whether an earlier version of ORS 12.160 might apply to her action, her general argument—that ORS 12.160 extends the amount of time that a child has to bring an action, even against a public body—has been adequately preserved for our review. *See Peeples v. Lampert*, 345 Or 209, 220, 191 P3d 637 (2008) (noting that "[p]reservation rules are pragmatic as well as prudential," and that "[w]hat is required of a party to adequately present a contention to the trial court can vary depending on the nature of the claim or argument; the touchstone in that regard, ultimately, is procedural fairness to the parties and to the trial court").

date such fraud, deceit or misleading representation is discovered or in the exercise of reasonable care should have been discovered."

For its part, defendant contends that, because plaintiff's action is against a public body, it is only subject to the time limitation set forth in ORS 30.275(9) and not the time limitation set forth in ORS 12.110(4), and therefore it is not an action "mentioned in" ORS 12.110(4). As noted, ORS 30.275(9) provides:

"Except as provided in ORS 12.120, 12.135 and 659A.875, but notwithstanding any other provision of ORS chapter 12 or other statute providing a limitation on the commencement of an action, an action arising from any act or omission of a public body or an officer, employee or agent of a public body within the scope of ORS 30.260 to 30.300 shall be commenced within two years after the alleged loss or injury."

In sum, according to defendant, plaintiff's action is governed by ORS 30.275(9), not ORS 12.110(4); thus, it is not one that is "mentioned in ORS 12.010 to 12.050, 12.070 to 12.250 and 12.276." ORS 12.160 (2005).

Based on the text of the statute, we conclude that plaintiff's action is one that is "mentioned in" ORS 12.110(4), because ORS 12.110(4) "note[s]," "call[s] attention to," or "refer[s] to" plaintiff's action—that is, "[a]n action to recover damages for injuries to the person arising from any medical, surgical or dental treatment, omission or operation." *See Webster's Third New Int'l Dictionary* 1412 (unabridged ed 2002) (defining the verb "mention" as ": to cite, note, or call attention to esp. in a brief, casual, or incidental manner : make mention of : refer to"). The fact that the particular time limitation applicable to plaintiff's action is set forth in ORS 30.275(9), and not in ORS 12.110(4), does not prevent the application of ORS 12.160 (2005) to plaintiff's claim. As Justice Linde observed for the Supreme Court in *Bradford v. Davis*, 290 Or 855, 861, 626 P2d 1376 (1981), "tort actions against public bodies * * * are not a specially created type of action but ordinary tort actions to which the legislature has consented to subject the government and its personnel[.]" The issue in *Bradford* was whether the plaintiff, a minor, was "entitled to an extension" of the time limitation for

commencement of his OTCA claim, pursuant to ORS 12.160 (1979). 290 Or at 860. Justice Linde stated that "[a]n action for damages for an alleged tort, or more compendiously 'for any injury to the person or rights of another, not arising on contract,' ORS 12.110, is one of those 'mentioned in ORS *** 12.070 to 12.160'" and "a person entitled to bring such an action therefore comes within ORS 12.160, notwithstanding that his particular action is against a public body[.]" *Id.* at 861.

The Supreme Court's reasoning in *Baker v. City of Lakeside*, 343 Or 70, 164 P3d 259 (2007), bolsters our conclusion in this case. The question in that case was whether ORS 12.020 (regarding when an action "shall be deemed commenced") applied to an OTCA action. *Id.* at 73. When considering whether ORS 30.275(9) rendered *all* provisions of ORS chapter 12, except ORS 12.120 and ORS 12.135, inapplicable to OTCA claims, the Supreme Court stated:

> "ORS chapter 12 consists primarily of sections providing the limitations periods for commencing various kinds of actions. *See, e.g.,* ORS 12.050 (limitations period for actions to recover real property); ORS 12.060 (limitations period for actions on land sale contracts); ORS 12.070 (limitations period for actions on judgments). However, that chapter also includes other provisions. As noted, ORS 12.020 sets out the rules for determining when an action will be commenced—rules that have been in place since statehood. Another provision, ORS 12.160 tolls the time in which persons under 18 years of age and persons who are 'insane' are required to bring an action. It is possible that, as the city argues, in amending ORS 30.275 in 1981, the legislature intended to preclude plaintiffs bringing OTCA claims from relying on the longstanding rule of procedure set out in ORS 12.020. It is also possible that the legislature may have intended to deny children and persons with mental disabilities bringing OTCA claims the benefit of a tolling rule that those plaintiffs would enjoy in any other action. But we are hesitant to attribute that intent to the legislature when it has not said so explicitly. *See State v. Miller*, 309 Or 362, 368, 788 P2d 974 (1990) (declining to infer that legislature departed from well-established procedures)."

*Baker*, 343 Or at 77. Then, after a detailed discussion of the legislative history of ORS 30.275, the court stated:

"Nothing in the legislative history suggests that the legislature intended to depart from the longstanding rule of procedure found in ORS 12.020(2), *nor does it suggest that the legislature intended to deny children and persons with mental disabilities bringing OTCA claims the advantage of a tolling provision that is available to them in every other action.*"

*Id.* at 82 (emphasis added).

Ultimately, the court in *Baker* determined that the phrase "notwithstanding any other provision of ORS chapter 12 or other statute providing a limitation on the commencement of an action," as used in ORS 30.275(9), "applies only to those provisions of ORS chapter 12 and other statutes that provide a limitation on the commencement of an action" and "does not bar application of ORS 12.020 to OTCA claims." *Id.* at 83.

The court's reasoning in *Baker* is informative in that it considered whether, in amending ORS 30.275 in 1981, the legislature intended to exempt OTCA claims from the "longstanding rule of procedure" set forth in ORS 12.020 (regarding when an action shall be "deemed commenced"). *Id.* at 73-77. Prior to the decision in *Baker*, we had concluded that the phrase "notwithstanding any other provision of ORS chapter 12 or other statute providing a limitation on the commencement of an action" in *former* ORS 30.275(8) (1981), *renumbered as* ORS 30.275(9) (2001),[10] meant that the two-year time limit for OTCA claims applied, "notwithstanding *any* other provision of ORS chapter 12," including ORS 12.160. *Lawson v. Coos Co. Sch. Dist. #13*, 94 Or App 387, 390, 765 P2d 829 (1988) (emphasis added); *see also O'Brien v. State of Oregon*, 104 Or App 1, 4-6, 799 P2d 171 (1990), *rev dismissed*, 312 Or 672, 826 P2d 633 (1992) (so interpreting *former* ORS 30.275(8) (1981)). In *Baker*, the

---

[10] *Former* ORS 30.275(8) (1981), which was almost identical to what is now set forth in ORS 30.275(9), provided:

"Except as provided in ORS 12.120 and 12.135, but notwithstanding any other provision of ORS chapter 12 or other statute providing a limitation on the commencement of an action, an action arising from any act or omission of a public body or an officer, employe or agent of a public body within the scope of ORS 30.260 to 30.300 shall be commenced within two years after the alleged loss or injury."

Supreme Court disagreed with the reasoning in *Lawson* and *O'Brien*, and, after considering the text, context, and legislative history of which by then had become ORS 30.275(9), the court held that "the notwithstanding clause in ORS 30.275(9) applies only to those provisions of ORS chapter 12 and other statutes that provide a limitation on the commencement of an action. The notwithstanding clause does not bar application of ORS 12.020 to OTCA claims." *Baker*, 343 Or at 83.

Based on the text of ORS 12.160 (2005), and following the Supreme Court's reasoning in *Bradford* and *Baker*, we conclude that ORS 30.275(9) does not bar application of ORS 12.160 (2005) to OTCA claims, because ORS 12.160 (2005) does not provide a limitation on the commencement of an action but instead provides for tolling the time allowed for the commencement of an action. Thus, plaintiff's claim "comes within ORS 12.160, notwithstanding that [her] particular action is against a public body." *Bradford*, 290 Or at 861.

In sum, we conclude that no objectively reasonable factfinder could conclude that plaintiff's action arose any later than August 2007; however, ORS 12.160 (2005) tolled the two-year time limitation for commencement of plaintiff's action for up to five years. Because plaintiff commenced her action within that time period, we conclude that the trial court erred when it granted summary judgment in favor of defendant on the basis that plaintiff had failed to timely file her claim.

Reversed and remanded.